THOMAS HALL, PLAINTIFF-RESPONDENT, v. MARK ZUCKERMAN, IRVING ZUCKERMAN, INDIVIDUALLY, ASSURED SALESMAKERS, INC., A NEW YORK CORPORATION AND MIRCOOP, INC., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS, AND MUSIC INFORMATION RETRIEVAL ASSOCIATES, INC., A NEW JERSEY CORPORATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued June 12, 1985—Decided July 1, 1985.

456

Before Judges MATTHEWS, FURMAN and HAVEY.

*Barry W. Frost* argued the cause for appellant Mark Zuckerman (*Teich, Groh, Robinson, Kline & Frost,* attorneys).

*Jerald D. Baranoff* argued the cause for appellants Irving Zuckerman and Assured Salesmakers, Inc. (*Sills, Beck, Cummis, Zuckerman, Radin & Tischman,* attorneys; *Clive S. Cummis* of counsel; *Jerald D. Baranoff, Marc S. Klein, Steven H. Sholk* and *Kathleen Burns* on the joint brief).

*Christine McHugh* argued the cause for respondent (*Pelletieri, Rabstein & Altman,* attorneys; *Richard M. Altman* of counsel; *Betsy Sweetser* on the brief).

No appearance was made on behalf of appellant MIRCOOP, Inc.

The opinion of the court was delivered by

FURMAN, J.A.D.

Based upon a jury verdict after a 29-day trial, the trial judge molded judgment of $436,875 in damages against defendants.

He calculated plaintiff's 37½% ownership in defendant Music Information Retrieval Associates, Inc. (MIRA) from the jury's answers to special interrogatories that the net worth of MIRA on June 24, 1979, the date of the sale of its assets, was $930,000, which included $905,000 in electronic music engraving programs developed by plaintiff. Defendants appeal.

We are constrained to reverse the judgment fixing damages for the value of plaintiff's equity in MIRA and to remand on that issue only, because of trial errors in evidential rulings. The value of MIRA's electronic music engraving programs or so-called software, obviously the bulk of its net worth, was critical. Because of the uniqueness and, it may be, innovativeness of the programs, with no record of their commercial profitability or market, the approach should have been to aid the jury in its difficult task of evaluation by admitting relevant evidence, insofar as permissible within the rules of evidence. That approach was not followed.

During discovery, defendants named two prospective expert witnesses, Richard Meckstroth in the field of computer programming and George McGuire in the field of music engraving. Defendants' answer to an interrogatory set forth, "No written reports received ... Meckstroth and McGuire reported that the computer programming performed by plaintiff for MIRA could not be used to produce acceptable music engraving and that it was necessary to undertake the programming work anew if an acceptable product were to be produced."

Plaintiff failed to move under *R.* 4:17–4(a) and (e) to compel production of experts' reports or under *R.* 4:23–5(b) to exclude their testimony at trial because of nonproduction of experts' reports. No written report by either expert was furnished to plaintiff, but Meckstroth testified on *voir dire* that, preceding the trial, he had discussed some of his conclusions with defendant Mark Zuckerman. After five weeks of trial, plaintiff objected to any testimony by Meckstroth or McGuire. During *voir dire* outside the presence of the jury both experts testified

to the factual underpinning of their so-called "net opinions" expressed in the above-quoted interrogatory answer. Meckstroth testified to his comprehensive factual survey of the MIRA software, McGuire to a more limited examination of it. Because of defendants' failure to supply their experts' reports before trial, the trial judge restricted their testimony to the net opinions set forth in the interrogatory answer, *R.* 4:23–5(b).

■ In our view, that sanction for breach of discovery rules was neither just nor reasonable under the circumstances, *see Westphal v. Guarino,* 163 *N.J.Super.* 139, 145–146 (App.Div. 1978), aff'd 78 *N.J.* 308 (1978). The exclusion substantially impeded the jury in carrying out its demanding undertaking of setting a value on previously unvalued, unique assets. To resolve the issue fairly, the jury should have had before it expert opinions on both sides to weigh and balance. *R.* 4:23–5(b) vests discretion in the trial judge whether to exclude an expert's report not furnished pursuant to *R.* 4:17–4(a) and (e).

Without the explanation and buttressing of their factual underpinning the net opinions of Meckstroth and McGuire that the software was substantially worthless lacked credibility and conviction. Conversely, plaintiff would not have suffered significant prejudice by their admission. He knew the net opinions through discovery; he was thoroughly conversant with his own software which the experts had surveyed and evaluated. We need not pass upon what the trial judge's disposition should have been, for example, to grant a mistrial or an adjournment to permit depositions. Under all the circumstances we conclude that his curtailment of the testimony of Meckstroth and McGuire was an abuse of his discretion, *see Brown v. Mortimer,* 100 *N.J.Super.* 395, 401 (App.Div.1968).

The only evidence of the net worth of the software, apart from defendants' experts' net opinions of its worthlessness, was that of Michael Barnett, plaintiff's expert. Barnett testified to a wide range of estimated values, anywhere from

$500,000 to $5,000,000, depending upon the scale of MIRA's operations. If MIRA's operations were to be "very, very modest," the value of plaintiff's software in his opinion would be the lower figure; if more extensive, the value would up to the higher figure. No testimony was introduced of MIRA's plans of operations to fit into any of Barnett's "models" of the scale of MIRA's operations.

From Barnett's testimony without further guidance, the jury reached its evaluation of the net worth of the MIRA software at $905,000, somewhere between Barnett's first and second "models." That result was in conflict with the established principle that a jury is limited in awarding damages to the lowest estimate of value by one witness on behalf of a plaintiff, for example, to $1,000 if plaintiff's expert has estimated the value of a car at between $1,000 and $1,250.

Defendants raise several other issues on appeal. We do not find reversible error in the denial of defendants' trial counsel's application to withdraw because he might be compelled to testify. He never in fact sought leave to testify nor made an offer of proof. Upon our remand on the issue of damages, the major issue in dispute between the parties, defendants' first trial counsel will be available, presumably, to testify as to any relevant factual knowledge which he may have.

We affirm the award of $85,000 in damages for tortious interference with plaintiff's reasonable economic expectations subsequent to the sale of MIRA's assets and its dissolution. That award was supported by ample credible evidence in the record. The punitive damage award of $20,000 in favor of plaintiff is not challenged on appeal.

Because of our remand on the issue of damages measured by the value of plaintiff's equity in MIRA, we need not pass upon the other points raised by defendants on appeal: that the trial judge erred in excluding evidence of a proposed

settlement offer by defendant Mark Zuckerman and in his arithmetical calculation in molding his judgment from the jury verdict. Nevertheless, the issues may recur, and we express our view that both lack merit.

We affirm the judgment of liability in favor of plaintiff awarding compensatory damages of $85,000 for tortious interference with plaintiff's reasonable economic expectations and punitive damages of $20,000. We reverse the judgment awarding damages of $331,875 for the value of plaintiff's ownership interest in MIRA and remand for further proceedings not inconsistent herewith. We do not retain jurisdiction.